UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


HEALTH CARE INDEMNITY, INC.

      Plaintiff


v.                                  Civil Action No.: 2:05-0913

JOHN A. KING, D.O.; HENRY ADKINS;
CARMELLA ADKINS; CALVIN
ARMSTEAD; DREMA ARMSTEAD;
MERLE BAKER; SIDNEY V. BARKER;
FANNIE BARTRAM; CLARENCE
BARTRAM; BRAD BELL; MICHELLE
BELL; REGINA BIRD; SANDRA
BOOTEN; WILLIAM BOWEN; BRENDA
BOWEN; EVERETT BROWN; ARTHUR
BROWNING; GINA BROWNING;
RICHARD BURCH; JAMES N. CABLE;
SHANE CARROLL; CECIL CARTER;
RITA CARTER; JIMMIE D. CAVENDER;
JOHN CLARK; SUSAN CLARK;
JARROD COINER, A MINOR BY AND
THROUGH HIS PARENTS LISA COINER
AND STEPHEN COINER; LISA COINER;
STEPHEN COINER; JUDY COX; JAMES
E. COX; WAYNE CROZIER; RENEA
CROZIER; VINCENTE CRUZ; LINDA
DEAN; HARLEN DEAN; CLARENCE
DILLON, A MINOR BY AND THROUGH
HIS MOTHER ELLEN KIRK; ELLEN
KIRK; STEVEN DINGESS; PAMELA
ERWIN; JAMES H. ESKINS; BRUCE
FLETCHER; DIANE FLETCHER; CAROL
FOREMAN; PHILIP FORTNER; ANDREA
FORTNER; RUTH S. FRYE; EVERETT
GIBSON; MARVIN GOODPASTER;
LINDA GOODPASTER; EMILY
GOODPASTER, A MINOR BY AND
THROUGH HER MOTHER LINDA
GOODPASTER; TYLER GOODPASTER,
A MINOR BY AND THROUGH HIS
MOTHER LINDA GOODPASTER;

1

LISA HANSROTH, ADMINISTRATRIX,
C.T.A. OF THE ESTATE OF JOHN A.
HANSROTH, DECEASED; ESTATE OF
JOHN A. HANSROTH; LISA
HANSROTH; KAITLYN E. HANSROTH,
A MINOR BY AND THROUGH HER
MOTHER LISA HANSROTH; HUNTER J.
HANSROTH, A MINOR BY AND
THROUGH HIS MOTHER LISA
HANSROTH; CHRISTOPHER C.
HANSROTH, A MINOR BY AND
THROUGH HIS MOTHER LISA
HANSROTH; JOHN L. HIGGINBOTHAM,
EXECUTOR OF THE ESTATE OF
HERMAN OTHO HIGGINBOTHAM,
DECEASED; ESTATE OF HERMAN
OTHO HIGGINBOTHAM; PEGGY
HILL; BILLIE HODGES; CAROL
HODGES; KIMBERLY HOFFMAN;
MICHAEL HOFFMAN; DAVID
HOLESTIN; AMBER HOLESTIN;
DALTON HOLESTIN, A MINOR BY
AND THROUGH HIS MOTHER AMBER
HOLESTIN; RONNIE G. JACKSON;
ROBERT JACOBS; PAM JACOBS;
DEBORAH JOHNSON; JAMES
JOHNSON, JR; TERRY JOHNSON;
LETHA MAY CHRISTIAN-JOHNSON,
EXECUTRIX OF THE ESTATE OF
CLEASBY ORNTNY JOHNSON,
DECEASED; ESTATE OF CLEASBY
ORNTNY JOHNSON; DAVID
JUSTICE; KATHRYN KEES; CARLEY
KIMBLE; ANGELA KNAPP; CHARLES
LAVENDER; TERRI LAVENDER;
FREDRICK L. LEFFINGWELL; SANDRA
LEFFINGWELL; JEFFREY
LEFFINGWELL; JOSHUA CONRAD
LEWIS, A MINOR BY AND THROUGH
HIS PARENTS KELLY JANE SMITH
AND DELBERT JOSEPH LEWIS; KELLY
JANE LEWIS; DELBERT JOSEPH
LEWIS; DANA E. LEISURE; JASON
LET; CORA LINVILLE; GROVER
LINVILLE; SANDRA LOWE; KENNETH
LOWE; PEGGY MARCUM; HAROLD
MAY FIELD; MICHAEL McCALLISTER;

RENEA McCOMAS; MORGAN
McCORMICK; CINDY McCORMICK WILLIAMS,
NEXT FRIEND OF
MORGAN McCORMICK; ROY JOSEPH
McCUNE; JAMES McDONALD; MAE
McDONALD; PAMELA McGREW;
HELEN McLEMORE; DUSTIN
MEADOWS; NINA MEADOWS; JOHN
MEADOWS; GREGORY MEANS;
RONALD MILLER, JR.; BARBARA
MORRIS; LEE MORRIS; MADELINE J.
MURPHY, A MINOR BY AND
THROUGH HER PARENTS APRIL
MURPHY AND MATHEW MURPHY;
APRIL MURPHY; MATHEW MURPHY;
BOBBI JO MUTO; JONATHON
NEMETH; TERESA NEMETH; ESTHER
D. NEWHART; SHERRY NICHOLAS;
RODNEY NICHOLAS; ROBERT
NIEBUR; MATTHEW NULL; SHELVA
NUNN; RANDY J. PECK; HAZEL
PLUMLEY; MICHAEL PLUMLEY; EXIE
E. REDMAN; DOY E. REDMAN;
CYNTHIA REED; JEREMY ROSE;
KATHERINE RUTLEDGE AKA
KATHRYN RUTLEDGE; BARRY
RUTLEDGE; KATIE RUTLEDGE, A
MINOR BY AND THROUGH HER
FATHER BARRY RUTLEDGE;
KIMBERLY SCOTT; JEFFREY SCOTT;
MICHAEL SEARLS; ROBERTA SHOCK;
FRANK SHOCK; JULIA SHOFFNER;
ANGELA SIZEMORE; DEXTER
SMALLEY; BRENDA SMALLEY;
KENNETH SMITH; DEBORAH SMITH;
ROBERT SMITH; ANNA LEA SMITH;
BRIAN SMITH; JOHN SNYDER; CAROL
SPONAUGLE; ADAM SPONAUGLE;
EVERETT STOVER; GARY SUMMERS;
GALE SUMMERS; KAREN TERRY;
BENJAMIN THOMAS; ALICE THOMAS;
SUSAN HARRISON, EXECUTRIX OF
THE ESTATE OF DORTHA THORNTON,
DECEASED; ESTATE OF DORTHA
THORNTON; JOHN C. THORNTON;
CARRIE TRIPLETT; MARK TRIPLETT,
A MINOR BY AND THROUGH HIS
FATHER WILLIAM TRIPLETT;

MADELINE TRIPLETT, A MINOR BY
AND THROUGH HER FATHER
WILLIAM TRIPLETT; WILLIAM
TRIPLET, A MINOR BY AND
THROUGH HIS FATHER WILLIAM
TRIPLET; KENNETH VAUGHAN;
ROBIN WAGEMAN; BETH A. WALKER;
MELISSA WALKER; KENNETH
WHITTEN; GARY WILFONG; KATRINA
WILFONG; VICKIE WILSON; EUGENE
WILSON; BARBARA WOOTEN; ROY
WORKMAN; AND DOES 1 THROUGH
100,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants' motions, filed February 13, February 16 and March 9, 2006, seeking dismissal of this action.[1]   Also pending before the court is the motion of defendant John A. King, D.O., filed March 30, 2006, seeking dismissal of this action for insufficient process and

_____

[1]On February 13, 2006, 71 sets of defendants, all represented by the law firm of Curry & Tolliver, filed a motion to dismiss.  Three days later, on February 16, 2006, 11 sets of defendants, all represented by the Law Offices of William S. Druckman, filed a motion to dismiss which adopted the memorandum in support of the motion to dismiss that was filed by the defendants represented by Curry & Tolliver.  Additionally, on March 9, 2006, 25 sets of defendants, all represented by the law firms Tabor Lindsay & Associates, DiTrapano, Barrett & Dipiero, and Conley Griggs, filed a motion to dismiss, also adopting the memorandum in support of the motion to dismiss filed by the defendants represented by Curry & Tolliver and asserting additional arguments as grounds for dismissal.  It is noted that attorney Paul M. Stroebel represents defendant Everett Brown who has answered the amended complaint and not joined in any of the motions to dismiss.

insufficient service of process, and the motion of Health Care
Indemnity, Inc., filed September 1, 2006, seeking to strike
and/or dismiss Dr. King's counterclaim.

I.

Teays Valley Health Services, LLC ("Teays Valley") owns
and operates Putnam General Hospital in Putnam County, West
Virginia.[2]  (Letter dated December 9, 2005, from HCI to Dr. King,
at 1, attached as Ex. B to Pl.'s. Memo. in Resp. to Tabor Lindsay
Defs.' Mot. to Dis.)("HCI letter")  In October of 2002, Teays
Valley and John A. King, D.O. ("Dr. King") entered into a
recruiting agreement which provided, among other things, that Dr.
King was responsible for maintaining his own professional
liability insurance and that nothing in the recruiting agreement
"shall be deemed any type of . . . joint venture relationship"
between King and Teays Valley.  (Id. at 2.)  The recruiting
agreement further provided that Dr. King was an independent
contractor and not a servant, agent or employee of Teays Valley.
(Id.)  Pursuant to the terms of the recruiting agreement, Dr.
King subsequently purchased and maintained for some period of
time a medical malpractice insurance policy; however, at an

_____

[2]Both parties reference "Teays Valley Health Services, Inc."
However, a search of the West Virginia Secretary of State
Business Organization Information System indicates that "Teays
Valley Health Services, LLC" is the proper name of the Teays
Valley entity.

unidentified time, Dr. King requested cancellation of this policy.  (Id. at 3.)

        In or about November of 2002, Dr. King received privileges to practice at Teays Valley.  (Id.)  In May of 2003, Dr. King's privileges were suspended by Teays Valley, and in August of 2003, Dr. King resigned his privileges as well as his West Virginia medical license.  (Id.)

        Defendants in this action, other than Dr. King, ("underlying plaintiffs") are patients and former patients of Dr. King and are currently plaintiffs in various state court actions pending in the Circuit Court of Putnam County, West Virginia against, among others, Dr. King and Teays Valley.  (Pl.'s Am. Compl. at ¶ 7.)  These actions arise out of the alleged medical malpractice committed by Dr. King during his Putnam County medical practice.  (Id. at ¶¶ 7, 8)

        Plaintiff Health Care Indemnity ("HCI"), is an insurance company with its principal place of business in the state of Tennessee.  (Pl.'s Am. Compl. at ¶ 1.)  HCI, which was not originally named in any of the state court actions, issued two health care liability insurance policies to HCA, Inc. ("HCA"), the corporate parent of Teays Valley.[3]  The two polices

_____

[3]According to plaintiffs, HCA owns HealthTrust Inc.-The Hospital Company ("HealthTrust"), a holding company with no employees.  HealthTrust, in turn, is the sole member of Hospital

6

were in effect at the time Dr. King's alleged medical malpractice

occurred.[4]   (Id. at ¶ 9.)   The relevant portions of the policies

provide,

II.   Persons Insured

Each of the following is an insured under this
Insurance Policy to the extent set forth below:

(a)   The named insured.  The "named insured,"
wherever used, includes:

(1)   any subsidiary company (including
subsidiaries thereof) of the named insured, or

(2)   if the named insured is a
partnership or joint venture, any partner or member
thereof, or any partnership in which the named
insured is a general or controlling partner now
existing, or heretofore created or acquired. [. . .]

(d)   Employees while acting within the scope
of their duties as such, other than employees in the
following employment categories:

(1)   physician, including osteopathic
physician . . .

(e)   Employees in the nine employment
categories excluded under (d) above, while acting
within the scope of their employment duties, but
only if those insureds are scheduled on the
Physician/Physician Extender List on file with the
Company prior to the date of the occurrence.

_____

Corp. LLC ("Hospital Corp."), another holding company, which owns
100% of Teays Valley.  Both HealthTrust and Hospital Corp. are
named as defendants in the state court actions.  The underlying
plaintiffs note that both Teays Valley and HCA are "corporations
having their principal place of business in Tennessee."  (Memo.
in Supp. of Curry & Tolliver Defs.' Mot. to Dis. at 1-2.)

[4]One policy was effective for the 2002 calendar year and the
other was effective for the 2003 calendar year.  The policies are
substantively identical.

(HCI Policies, attached as Ex. A HCI's Resp. to Mot. to Dis.)
HCI appears to concede that Teays Valley is insured under the two
policies inasmuch as Teays Valley is a subsidiary of HCA. (HCI
letter at 1.)

The numerous state court complaints are not before the
court; however, those complaints are substantially similar and
typically name as defendants Teays Valley; HCA; and Wright
Medical Technology, Inc. ("Wright Medical") and EBI L.P. ("EBI"),
two corporations that sold or supplied medical products,
equipment, and devices to Dr. King, his physician's assistant,
and/or Teays Valley.  (HCI letter at 3-4.)  Among the allegations
contained in the underlying plaintiffs' complaints is that Dr.
King and Teays Valley, among others, were engaged in a joint
venture or joint enterprise under West Virginia law.  (Id.)

In response to the state court actions, Dr. King's
attorney, P. Gregory Haddad, contacted HCI by letter dated
November 11, 2005, insisting that HCI was obligated to defend and
indemnify Dr. King under the provision[s] of the HCI policies
which referenced "joint venture."  (Aff. of Robert P. Martin,
counsel for HCI, at ¶ 4.)  According to HCI, Dr. King asserted
that he qualifies as a person insured under Section II(a)(2) of
the HCI policies, quoted supra, which provides that a "named

insured" under the policies includes, "if the named insured is a partnership or joint venture, any partner or member thereof, or any partnership in which the named insured is a general or controlling partner now existing, or heretofore created or acquired." Inasmuch as a number of the underlying plaintiffs' complaints contain allegations that Dr. King was involved in a joint venture with, among others, Teays Valley, a "named insured" under the HCI policies, Dr. King asserts that HCI is obligated to defend and indemnify him under this section of the policies. (HCI letter at 3.) The underlying plaintiffs concur in Dr. King's interpretation of the policy provision regarding "joint venture." (Supp. Memo. in Supp. of Curry & Tolliver Defs.' Mot. to Dis. at 2.)

HCI contends it is under no obligation to defend or indemnify Dr. King. According to HCI "[n]either of the HCI policies contains any endorsement, or other policy provision, naming Dr. King as a 'named insured,' 'insured,' or otherwise as a person insured under the policy." HCI further maintains that Dr. King is a doctor of osteopathy, was never listed on the Physician/Physician Extender List maintained by HCI, and was never an employee of Teays Valley.

It is HCI's position that the policy provision in which

9

"joint venture" is referenced does not support Dr. King's claim. According to HCI,

> The first clause of section II(a)(2) only applies <u>if</u> the "named insured" is a "partnership or joint venture." For that to apply, the "joint venture" allegation in the various complaints must create a 'named insured" as defined by the HCI policies.

> The HCI policies define "named insured" to mean (1) the "first named insured," (2) "any additional organizations identified as a named insured in the Declaration page or by Endorsements, if any are attached," and (3) "any <u>subsidiary organizations</u> of a named insured that are in existence at the inception of the policy, or that are either created or acquired during the term of the policy." None of those three subparts of the definition of "named insured" applies here.

> Neither the declarations page nor any endorsement to the HCI policies names any joint venture involving Dr. King as a named insured. The second subpart of the definition of "named insured" does not apply.

> Both the first and third subparts of the definition of "named insured" apply only to "<u>subsidiary organizations</u>." The "first named insured" is listed on the declarations as "HCA Inc. and subsidiary organizations existing now or hereafter created or acquired." The third subpart includes "subsidiary organizations" in identical language.

(HCI letter at 6-7.)(emphasis in original). HCI further contends that even assuming that an underlying plaintiff could demonstrate an ad hoc joint venture for the purpose of establishing vicarious liability, that would not constitute a "subsidiary organization of a named insured," and HCI would be under no duty to defend or

indemnify Dr. King.

        Prior to the institution of this action, on November 15, 2005, one of the underlying plaintiffs, Cynthia Reed, mailed to the Circuit Court of Putnam County a motion to amend her complaint seeking "a declaratory [judgment] that [HCI] is under an obligation to defend King in this [state circuit court] action brought by the plaintiff, as well as provide coverage."  (Reed Am. Compl. ¶ 105, attached as Ex. B. to Curry & Tolliver Defs.' Suppl. Memo. in Supp. of Mot. to Dis.)  One day later, on November 16, 2005, HCI instituted this declaratory judgment action in this court naming only Dr. King as a defendant.  On December 15, 2005, HCI amended its complaint to add the underlying plaintiffs as defendants.

        On April 13, 2006, the Circuit Court of Putnam County, West Virginia entered an order granting Reed's motion to amend her complaint, and on April 19, 2006, Reed filed an amended complaint asserting a declaratory judgment claim against HCI.[5]   (Putnam

_____

        [5]The underlying plaintiffs note that the two sitting judges in the Circuit Court of Putnam County have assigned Civil Action No. 05-C-5000 to be used in all cases involving claims brought against Dr. King and Teays Valley.  The underlying plaintiffs further represent that the Reed action bears the Civil Action No. 05-C-5000, and accordingly, "all affected parties including both individuals bringing claims against [Dr.] King and Putnam General, and all entities that have been sued, have the opportunity to litigate the coverage issue."  (Supp. Memo. in

11

Circuit Court Order at 1, attached as Ex. A to Supp. Memo. in
Supp. of Curry & Tolliver Defs.' Mot. to Dis.)

        In their motions to dismiss, the underlying plaintiffs
maintain that the court should decline to exercise jurisdiction
under the Declaratory Judgment Act and further assert that HCI has
failed to join necessary and indispensable parties.  HCI responds
contending that federal jurisdiction is proper in this declaratory
judgment action.

                                II.

        Under the Declaratory Judgment Act, a district court,
"may declare the rights and other legal relations of any
interested party seeking such declaration, whether or not further
relief is or could be sought."  28 U.S.C. § 2201(a).  Consistent
with the language of the statute, the Supreme Court has
"characterized the Declaratory Judgment Act as 'an enabling Act,
which confers a discretion on the courts rather than an absolute
right upon the litigant.'"  Wilton v. Seven Falls Co., 515 U.S.
277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co.,

_____

Supp. of Curry and Tolliver Defs.' Mot. to Dismiss at n. 1.)  HCI
disputes this contention and responds noting that Reed is the
only underlying state court action in which a declaratory
judgment claim has been asserted against HCI and a decision on
the declaratory judgment claim in Reed may not bind the other
underlying plaintiffs.

                                12

344 U.S. 237, 241 (1952)).

In exercising its discretion to hear cases seeking a declaratory judgment, a district court must first consider whether the declaratory judgment action will both "serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

If this criteria is met, the court must next consider the four-factor test set forth by our court of appeals in Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994). Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004)(internal citations omitted). Under Nautilus, a district court takes into account: 1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court; 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action would result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or law; and 4) whether the federal action is being used merely as a device for "procedural fencing,"

i.e., to provide another forum in a race for res judicata.  <u>Id.</u>

III.

**A.  <u>Jurisdiction under the Declaratory Judgment Act</u>**

The United States Court of Appeals for the Fourth Circuit has recognized that a declaratory judgment action "'serve[s] a useful purpose' in settling the disputed rights of [the insurer] and the [insureds] under the insurance policy, and a declaratory judgment would 'afford relief' from the uncertainty of whether coverage exists under the policy." <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d 488, 494 (4th Cir. 1998).  Inasmuch as this declaratory judgment action would serve the useful purpose of settling the dispute regarding HCI's alleged obligations to both defend and indemnify Dr. King and would afford relief from the uncertainty surrounding the existence of those obligations, the court finds that the requirements of the initial inquiry are satisfied.

HCI suggests that the court need not address the <u>Nautilus</u> factors inasmuch as there is no parallel state court proceeding addressing the declaratory judgment issues HCI raises before this court.  This suggestion appears to be moot in light of the state court's decision to permit amendment of the complaint in

14

the Reed action.  Moreover, our court of appeals has expressly
held that "[t]here is no requirement that a parallel proceeding be
pending in state court before a federal court should decline to
exercise jurisdiction over a declaratory judgment action."  Aetna
Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 423 (4th Cir.
1998).  Instead, the existence of a parallel proceeding is simply
one consideration factored into the analysis of whether to retain
jurisdiction over the action.  Id.  Thus, review and application
of the Nautilus factors is appropriate.

1.  West Virginia's Interest

        The first Nautilus factor to be considered is the
"strength of the state's interest in having the issues raised in
the federal declaratory action decided in state court."  Nautilus,
15 F.3d at 377.  The United States Court of Appeals for the Fourth
Circuit has recognized that, "[t]here exists an interest in having
the most authoritative voice speak on the meaning of applicable
law, and that voice belongs to the state courts when state law
controls the resolution of the case."  Mitcheson v. Harris, 955
F.2d 235, 237 (4th Cir. 1992).  Our court of appeals has further
explained that a state court will have a rather strong interest in
resolving an issue of state law that is particularly "close,"
"difficult," or "problematic."  See Nautilus, 15 F.3d at 378.

15

HCI maintains West Virginia's interest is minimal, at best, inasmuch as the law of Tennessee governs the policies' interpretation.  Alternatively, HCI contends that, even if West Virginia law were to apply, this court would simply be applying settled West Virginia law regarding contract interpretation.  The underlying plaintiffs respond collectively, asserting that West Virginia contract law governs resolution of the issues presented in this action.  They further insist that a novel issue of state law is present in this case inasmuch as "the State of West Virginia has never addressed insurance coverage for joint venturers."

When exercising diversity jurisdiction, a district court applies the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). This court, therefore, would apply West Virginia's conflict of law principles.  It has been recognized that "[t]he Supreme Court of Appeals of West Virginia consistently relies on the Restatement (Second) of Conflict of Laws to determine which state's law should govern resolution of issues pertaining to interpretation of insurance contracts."  Martin ex rel. Martin v. John Hancock Mut. Life Ins. Co., 56 F. Supp.2d 670, 672 (S.D. W. Va. 1999) (internal citations omitted).  Under the Restatement (Second), the law of

16

the state with the most significant relationship to the dispute governs unless the parties' contract contains a choice-of-law provision.  Restatement (Second) §§ 186-88 (1971).  Here, there is no choice-of-law provision in the policies and both HCI and the underlying plaintiffs discuss application of the significant relationship test.

States with a relationship to the dispute include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the insured risk, and the domicile, residence, place of incorporation, and place of business of the parties.  McGough v. Nalco Co., 420 F. Supp.2d 556, 566 (N.D. W. Va. 2006) (quoting Restatement (Second) of Conflicts § 188(2) (1971)).

Application of the significant relationship test suggests that Tennessee law would govern this action.  The policies were executed and negotiated by HCI and HCA, two residents of Tennessee.  Additionally, the policies appear to have been delivered in Tennessee.  The performance of the policies was to occur, in part, in West Virginia inasmuch as the two policies insured entities in West Virginia; however, the two policies also insured corporate entities across the nation in over twenty states including Tennessee.  Similarly, while Teays Valley's Putnam

General Hospital is located in West Virginia, the insured risk is spread among those same twenty states including West Virginia and Tennessee.  Finally, the domicile, residence, and place of incorporation and business of the parties includes both Tennessee and West Virginia inasmuch as the underlying plaintiffs are, presumably, all West Virginia residents and HCI is a Tennessee corporation.  While West Virginia does have some relationship to the policies, application of the significant relationship test tilts in favor of Tennessee whose law would therefore govern interpretation of the policies.  Liberty Mut. Ins. Co. v. Triangle, Indus., Inc., 390 S.E.2d 562, Syl. pt. 1 (W. Va. 1990)(absent exceptional circumstances, when interpreting an insurance policy "made in one state to be performed in another, the law of the state of the formation of the contract shall govern").

     Even assuming that West Virginia law governed this action, the court would simply be applying relatively settled West Virginia principles of law governing the interpretation of contracts.  Such an application does not present a "difficult" or "unsettled" question of state law.  Accordingly, West Virginia's interest does not appear to be significant.  See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998)(a state's interest is "not particularly significant" where the issues

18

involved are standard ones of agency and contract interpretation and the federal court is unlikely to break new ground or be faced with novel issues of state interest); see also Nautilus, 15 F.3d at 378 ("a requirement that the state law issues be 'difficult' or 'unsettled' is implicit in Mitcheson, which emphasized repeatedly that the particular state-law questions raised were 'close,' 'difficult,' and 'problematic.'").

Consequently, application of the first Nautilus factor militates in favor of retaining federal jurisdiction.

## 2.  Efficiency

The second factor is whether the issues presented in the declaratory judgment action can be resolved more efficiently in the state court action.  Addressing this factor, a district court should conduct a "careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [in the federal forum] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and also] whether such parties are amenable to process in that proceeding.'" Nautilus, 15 F.3d at 378-79 (citing Brillhart, 316 U.S. at 495).

The briefing indicates that in the underlying state

19

court action, plaintiffs have thus far disclosed 356 witnesses
many of whom, presumably, would be relevant only to the liability
and damages issues present in the state court action.  It appears
that both Dr. King and HCI would suffer hardship if the outcome of
this coverage dispute had to await what will likely be extensive
discovery and lengthy, multiple phase trials in the state court
actions.  By contrast, the declaratory judgment action before this
court involves only the coverage issues and is proceeding
expeditiously towards resolution.

        With respect to the <u>Reed</u> action, the order permitting
the amendment came long after the institution of this federal
action.  When a ruling on the declaratory judgment count in that
single action may come is not known.  Furthermore, the underlying
plaintiffs are involved in well over one hundred lawsuits against
Dr. King in which no similar declaratory judgment action has been
asserted.  Although the cases appear to have been consolidated and
are proceeding under one civil action number, there is no
indication that the other plaintiffs have similarly sought
declaratory relief.  While Reed desires to seek declaratory relief
in her action it does not follow that her desire binds the
remaining underlying plaintiffs, many of whom are represented by
different counsel.  Whether the state circuit court's ruling in
the <u>Reed</u> action would bind the remaining underlying plaintiffs who

have not asserted a declaratory judgment claim is not apparent.
Having observed the uncertainty surrounding both the binding
effect and the timing of any decision on the declaratory judgment
count in the Reed action and further observing that in this
federal action all but two of the underlying plaintiffs have
appeared, the court concludes that it would be more efficient to
proceed with the declaratory judgment issues in this court.[6]

The underlying plaintiffs' contention that certain non-
diverse state court defendants, including Teays Valley, are
necessary and indispensable parties under Rule 19 of the Federal
Rules of Civil Procedure is without merit.[7]  In support, the
underlying plaintiffs state that these defendants have asserted
cross-claims against Dr. King seeking indemnity and contribution
and thus "have an interest in this action and might be prejudiced
by a declaration that coverage does not exist."

---

[6]Michael McCallister and Angela Sizemore have been served
but have not yet appeared.  Robert Niebur, another underlying
plaintiff, had been served but not yet appeared; however, HCI
voluntarily dismissed Niebur on September 22, 2006.

[7]According to the underlying plaintiffs the other non-
diverse defendants in the state court actions consist of the
following corporations having their principal place of business
in the state of Tennessee: Teays Valley, HCA, HealthTrust,
Hospital Corp., and Wright Medical.  (Supp. Memo. in Supp. of
Curry & Tolliver Defs.' Mot. to Dis. at 2.)

Rule 19(a) of the Federal Rules of Civil Procedure provides that a party is necessary if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Applying this rule, it appears that complete relief as between HCI and Dr. King can be accorded and the underlying plaintiffs who certainly have an interest in the coverage determination are also parties in this federal action.  It is quite plain that the absence of Teays Valley and the other non-diverse codefendants does not affect the court's ability to grant declaratory relief in this case.  See Black Diamond Girl Scout Council v. St. Paul Fire & Marine Ins. Co., 621 F. Supp. 96, 98 (S.D. W. Va. 1985)(addressing the question of whether an absent state court party was "necessary" under Rule 19 in the context of a declaratory judgment action and observing that "complete relief can be accorded simply by the adjudication of [the insurer's]

22

duties under the policy which requires neither the state court plaintiff or defendants").

The court next turns to the absent state court defendants' interests.  The interests of Teays Valley and the other entities insured under the HCI policies do not appear to be impaired, and to a certain extent, likely coincide with the interests of HCI insofar as those insured entities will almost certainly seek to distance themselves from Dr. King, arguing that he is neither an employee of Teays Valley nor was he engaged in a joint venture with Teays Valley.  Also, it appears the remaining absent state court corporate defendants, not insured under the HCI policies, have other liability insurance or indemnification agreements and none of these entities has made a demand or claim for coverage under the HCI policies.[8]  The absent state court defendants thus do not appear to be necessary parties and the court need not consider whether they are indispensable.

The court accordingly concludes that an analysis of the efficiency factor weighs heavily in favor of retaining jurisdiction.

_____

[8]Wright Medical and EBI appear to be the only two absent state court corporate defendants who are not insured under the HCI policies.

23

3.   **Unnecessary Entanglement**

Unnecessary entanglement arises when there are overlapping issues of fact or law in the federal and state court actions.  <u>Mitcheson v. Harris</u>, 955 F.2d 235, 237-40 (4th Cir. 1992).  The concern is that "issue preclusion will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution.'"  <u>Id.</u>, 955 F.2d at 239 (internal citations omitted).

The underlying plaintiffs insist that there are "overlapping issues of fact and law as to whether [Dr.] King, Teays Valley, Wright Medical and others were involved in a joint venture."  Without delving into the merits of this declaratory judgment action, it appears that even assuming plaintiffs did receive a favorable verdict on the issue of joint venture liability, the issues surrounding HCI's purported obligations to defend and indemnify Dr. King will remain unresolved inasmuch as a determination of an existence of these obligations turns not on the existence of any joint venture, but rather on the interpretation of the term "subsidiary organization" under the HCI policies.  <u>See</u> HCI letter, quoted <u>supra</u>.  Moreover, this declaratory judgment action only involves the issues surrounding

HCI's obligation to defend and indemnify Dr. King and does not contain the underlying issues of liability, vicarious liability and compensatory and punitive damages which are present in the state court action.  While it is true that the declaratory judgment issues present in this case are also present in the <u>Reed</u> action, the court has already observed the uncertainty surrounding the binding effect and timing of a decision in the <u>Reed</u> action. Additionally, the <u>Reed</u> action contains 14 other counts involving issues of liability, vicarious liability, compensatory and punitive damages, all with no significant relationship to this coverage dispute.  It is reasonable to conclude that one overlapping question of law in one of over 100 actions involving the underlying plaintiffs does not warrant abstention in this matter, especially in light of the fact that all but two of the underlying plaintiffs have appeared in this action.

Accordingly, the minimal threat of unnecessary entanglement also favors the retention of this declaratory judgment action.

## 4.   <u>Procedural Fencing</u>

Our court of appeals has recognized that in some cases the declaratory judgment action may be "used merely as a device for 'procedural fencing' - that is, 'to provide another forum in a

25

race for res judicata' or 'to achiev[e] a federal hearing in a
case otherwise not removable.'" Ind-Com Elec., 139 F.3d at 422,
(quoting Nautilus, 15 F.3d at 371).

        The parties devote much attention to the motivating
factor behind HCI's institution of the federal declaratory
judgment action.  HCI contends it instituted this action on
November 16, 2005, in response to the letter from Dr. King's
counsel dated November 11, 2005.  The underlying plaintiffs
suggest that HCI filed this action in response to the November 15,
2005, mailing of the motion to amend the complaint in the Reed
action.

        The court observes that HCI's counsel has represented
that he did not receive notice of the Reed action prior to
November 16, 2005, since the motion to amend in Reed was never
sent to him.  Inasmuch as on November 15, 2005, HCI was not yet a
party to the Reed action, there would have been no reason for HCI
to receive notice of the motion.  Moreover, HCI did not become a
party in the Reed action until five months later when the state
circuit court permitted the amendment of Reed's complaint.  The
underlying plaintiffs' contention that HCI engaged in 'procedural
fencing' by instituting this action the day after the mere mailing
of the Reed motion to amend the complaint in but one of the over

                              26

100 state court actions, which motion was not mailed to HCI, does not appear to withstand scrutiny.  In any event, the court need not further attempt to divine HCI's intent in instituting this action, having already found that three of the four <u>Nautilus</u> factors militate in favor of retaining jurisdiction over this declaratory judgment action.

Applying the <u>Nautilus</u> factors, the court finds that it should exercise jurisdiction over this declaratory judgment action.

B.  <u>Dr. King's Motion to Dismiss</u>

Dr. King was named in but not served with the original complaint in this case.  The docket indicates that a summons accompanied by the amended complaint was first issued by the Clerk on behalf of HCI for Dr. King on March 9, 2006; however, HCI did not file a receipt of service with the court.  According to an affidavit filed by HCI's counsel on March 31, 2006, the computer tracking information for the summons and amended complaint, which were sent by certified mail to Dr. King, indicates that both documents were delivered to Dr. King on March 13, 2006.  An exhibit is attached which supports the affidavit, and Dr. King has not contested its veracity.

Dr. King asserts that this action should be dismissed for insufficiency of process under F.R.C.P. 12(b)(4) and insufficiency of service of process of HCI's amended complaint under F.R.C.P. 12(b)(5). According to Dr. King, service was defective under Rule 12(b)(4) inasmuch as (1) the summons served with HCI's amended complaint failed to identify the additional underlying plaintiffs named in the amended complaint who had not been named in the original complaint; and (2) the summons stated that Dr. King was being served with the complaint as opposed to the amended complaint which was the document attached to the summons.

Dr. King further contends that service of process was insufficient under Rule 12(b)(5) inasmuch as HCI attempted to serve Dr. King at an address of a store where Dr. King maintains a post office box, which is not a physical address for Dr. King's residence or employment. Dr. King also notes that there is no evidence of service since HCI has failed to file the return receipt evidencing service of process. HCI has responded to Dr. King's motion and Dr. King has not replied.

1.  <u>Insufficiency of Process</u>

Under Rule 4(a) of the Federal Rules of Civil Procedure "[t]he summons shall . . . identify the court and the parties."

Although the statute requires the summons to identify the parties, our court of appeals has recognized that noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect in service. See Karlsson v. Rabinowitz, 318 F.2d 666, 668-69 (4th Cir. 1963).

It is undisputed that Dr. King has received actual notice of the suit. Also, the challenges to service asserted by Dr. King amount to nothing more than technical defects. While the summons did not identify all the defendants in this action, namely, the underlying plaintiffs, the style of the amended complaint, which was attached to the summons, listed all of the underlying plaintiffs. Similarly, while the summons referenced the complaint instead of the amended complaint, the latter was attached to the summons and it was plain enough that this was the document Dr. King was required to answer. Finally, Dr. King has not identified, nor does the court find, any prejudice that has arisen from these technical defects. The court concludes that dismissal for insufficiency of process is not warranted under these circumstances. See Clement v. Motta, 820 F. Supp. 1035, 1039 (W.D. Mich. 1991) (defendant had actual notice of suit and suffered no prejudice even though he may have received a summons with another defendant's name on it inasmuch as the defendant

29

simultaneously received a copy of the complaint which clearly identified him as a defendant); see also, Vegga Matta v. Alvarex de Choudens, 440 F. Supp. 246, 248-49 (D.P.R. 1977), aff'd without opinion, 577 F.2d 722 (1st Cir. 1978)(dismissal not warranted when summons failed to include all codefendants in the caption of each summons, but caption of complaint, which was attached to summons, included the names of all codefendants).

HCI argues that the court should order the summons amended nunc pro tunc. HCI has not provided, nor can the court locate, any authority which would permit the court to do so. Federal Rule of Civil Procedure 4(a) provides only that a "court may allows a summons to be amended." Our court of appeals has recognized that a defendant has a right to receive a summons that complies with the Federal Rules and in such a situation has found leave to amend the summons to be the appropriate remedy. United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 873-74 (4th Cir. 1947)("[t]he [defendant] corporation had the right to be accurately named in the process and pleadings of the court; and the misnomer was properly raised"). The court finds that the more appropriate course is to grant HCI leave to amend the summons which it may do, if at all, on or before October 5, 2006, but this case may in any event proceed as though process is sufficient.

30

2.  <u>Insufficiency of Service of Process</u>

The United States Supreme Court has recognized that the primary purpose of service of process is to give a defendant legal notice of the claims asserted against him so that he may prepare his defense.  <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999).  Under Rule 4(e) of the Federal Rules of Civil Procedure service upon an individual may be effected (1) pursuant to the law of the state in which the district court is located, or in which service is effected or (2) by delivery of a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode.

HCI represents and Dr. King does not refute that Dr. King attempted to evade service of process in the underlying state court actions.  In response, the state court entered an order approving service on Dr. King by certified mail at the same address to which the summons and first amended complaint here were sent: 11310 S. Orange Blossom Trail Orlando, Florida 32832.  HCI's service was thus effected in the same manner as that directed by the state court in the underlying actions, which this court finds to be sufficient as service in this case.

31

Service on Dr. King was timely inasmuch as it was effected on March 13, 2006, within 120 days after the filing of the original complaint on November 16, 2005.

C.   Dr. King's Counterclaim and HCI's Motion to Strike and/or Dismiss

On August 14, 2006, Dr. King filed an answer and counterclaim in this action asserting that "HCI has refused to provide Defendant/Counter-Plaintiff with a defense or coverage for the malpractice claims asserted against him," and further alleging that, "[t]his is a breach of the terms of the HCI policies and an act of bad faith."  (Counterclaim at ¶ 12.)  HCI contends that this counterclaim should be stricken and/or dismissed.  In support, HCI observes that the counterclaim was not timely asserted and it would be prejudiced were Dr. King to be permitted to assert this counterclaim.  HCI further observes that the counterclaim should be stricken inasmuch as it was filed in violation of the local rules by an Alabama attorney, Steven D. Heninger, not admitted to practice before this court.

The court first observes that a number of attorneys have represented Dr. King in this action.  Dr. King continues to be represented by P. Gregory Haddad, a West Virginia attorney, who appears as counsel of record and has never sought to withdraw from

32

his representation of Dr. King.  Mr. Haddad participated in the
Rule 26(f) meeting and also filed Rule 26(a)(1) disclosures on
behalf of Dr. King.  The answer and counterclaim, however, were
filed by Mr. Heninger on August 14, 2006.  Also on August 14,
2006, a notice of attorney appearance was filed by Lance E. Rollo,
an attorney licensed to practice in West Virginia and before this
court, which indicated that he was serving as local counsel for
Dr. King in this matter.  Approximately three weeks later, on
September 5, 2006, in accordance with the local rules, the court
received the statement of a visiting attorney, Richard E. Crum of
Dothan, Alabama, who now also represents Dr. King.

Under this court's Local Rule of Civil Procedure 83.6
(a), effective August 1, 2006,

> Any person who has not been admitted to practice before
> the Supreme Court of Appeals of West Virginia, but who
> is a member in good standing of the bar of the Supreme
> Court of the United States, the bar of the highest
> court of any other state in the United States, or the
> bar of the District of Columbia, shall be permitted to
> appear as a Visiting Attorney in a particular case . .
> .  The Visiting Attorney shall file with the clerk, at
> or before his or her initial appearance (including
> signing a pleading), the Statement of Visiting Attorney
> adopted by order of this court, which is available from
> the clerk and on the court's web site, and shall pay
> the Visiting Attorney fee. . .  <u>Any paper filed by a
> Visiting Attorney not in compliance with this rule may
> be stricken from the record after 15 days' written
> notice transmitted to the Visiting Attorney at his or
> her address as known to the clerk</u>.

(emphasis supplied). Inasmuch as Mr. Heninger is an attorney from Alabama and lists only an Alabama State Bar Number on the answer and counterclaim and inasmuch further as the court's docket indicates that he has not filed a statement of visiting attorney, or related motion, Mr. Heninger has failed to comply with the requirements of Local Rule of Civil Procedure 83.6(a). The answer and counterclaim filed by Mr. Heninger are therefore fugitive pleadings and subject to being stricken from the record in accordance with the local rule after the 15 days notice is given to Mr. Heninger by the clerk's forwarding to him of a copy of this order, unless within that 15-day period counsel of record for Dr. King file a notice of adoption of the answer and counterclaim by Dr. King. In lieu of the adoption of the answer and counterclaim, Dr. King may file an answer and a counterclaim on or before October 15, 2006.

Accordingly, the court has determined to deny HCI's motion to strike and/or dismiss without prejudice.

The court observes that the relief sought in the amended complaint is readily severable from that which is proposed in the counterclaim. The court further observes that should HCI prevail on the matters raised in the amended complaint, the breach of contract and bad faith claims proposed in the counterclaim would

34

likely be mooted.  Consequently, the court, <u>sua</u> <u>sponte</u>, bifurcates the cause of action set forth in the amended complaint from those that may be presented in any counterclaim.

IV.

In view of the foregoing it is ORDERED that

(1)  defendants' motion to dismiss, be, and it hereby is, denied;

(2)  Dr. King's motion to dismiss for insufficiency of process and insufficiency of service of process, be, and it hereby is, denied;

(3)  HCI's motion to strike and/or dismiss Dr. King's counterclaim be, and it hereby is, denied without prejudice;

(4)  HCI be, and it hereby is, granted leave to amend the summons, should it elect to do so, with any such amendment to take place on or before October 5, 2006,;

(5)  counsel of record for Dr. King may file a notice of adoption of the answer and counterclaim within 15 days of the entry of this order or, in the alternative, may file an answer and a counterclaim on or before October 15, 2006;

35

(6)   all matters at issue in this case other than those arising on the amended complaint be, and they hereby are, stayed pending further order of the court, except for perfection of the counterclaim and the filing of any response thereto.

The Clerk is directed to forward copies of this order to all counsel of record and Steven D. Heninger at P.O. Box 11310, 2224 1st Avenue North, Birmingham, AL 35203.

DATED:  September 25, 2006

John T. Copenhaver, Jr.
United States District Judge