UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

HEALTH CARE INDEMNITY, INC.

      Plaintiff

v.                                      Civil Action No.: 2:05-0913

JOHN A. KING, D.O.; HENRY ADKINS;
CARMELLA ADKINS; CALVIN
ARMSTEAD; DREMA ARMSTEAD;
MERLE BAKER; SIDNEY V. BARKER;
FANNIE BARTRAM; CLARENCE
BARTRAM; BRAD BELL; MICHELLE
BELL; REGINA BIRD; SANDRA
BOOTEN; WILLIAM BOWEN; BRENDA
BOWEN; EVERETT BROWN; ARTHUR
BROWNING; GINA BROWNING;
RICHARD BURCH; JAMES N. CABLE;
SHANE CARROLL; CECIL CARTER;
RITA CARTER; JIMMIE D. CAVENDER;
JOHN CLARK; SUSAN CLARK;
JARROD COINER, A MINOR BY AND
THROUGH HIS PARENTS LISA COINER
AND STEPHEN COINER; LISA COINER;
STEPHEN COINER; JUDY COX; JAMES
E. COX; WAYNE CROZIER; RENEA
CROZIER; VINCENTE CRUZ; LINDA
DEAN; HARLEN DEAN; CLARENCE
DILLON, A MINOR BY AND THROUGH
HIS MOTHER ELLEN KIRK; ELLEN
KIRK; STEVEN DINGESS; PAMELA
ERWIN; JAMES H. ESKINS; BRUCE
FLETCHER; DIANE FLETCHER; CAROL
FOREMAN; PHILIP FORTNER; ANDREA
FORTNER; RUTH S. FRYE; EVERETT
GIBSON; MARVIN GOODPASTER;
LINDA GOODPASTER; EMILY
GOODPASTER, A MINOR BY AND
THROUGH HER MOTHER LINDA
GOODPASTER; TYLER GOODPASTER,
A MINOR BY AND THROUGH HIS
MOTHER LINDA GOODPASTER;

1

LISA HANSROTH, ADMINISTRATRIX,
C.T.A. OF THE ESTATE OF JOHN A.
HANSROTH, DECEASED; ESTATE OF
JOHN A. HANSROTH; LISA
HANSROTH; KAITLYN E. HANSROTH,
A MINOR BY AND THROUGH HER
MOTHER LISA HANSROTH; HUNTER J.
HANSROTH, A MINOR BY AND
THROUGH HIS MOTHER LISA
HANSROTH; CHRISTOPHER C.
HANSROTH, A MINOR BY AND
THROUGH HIS MOTHER LISA
HANSROTH; JOHN L. HIGGINBOTHAM,
EXECUTOR OF THE ESTATE OF
HERMAN OTHO HIGGINBOTHAM,
DECEASED; ESTATE OF HERMAN
OTHO HIGGINBOTHAM; PEGGY
HILL; BILLIE HODGES; CAROL
HODGES; KIMBERLY HOFFMAN;
MICHAEL HOFFMAN; DAVID
HOLESTIN; AMBER HOLESTIN;
DALTON HOLESTIN, A MINOR BY
AND THROUGH HIS MOTHER AMBER
HOLESTIN; RONNIE G. JACKSON;
ROBERT JACOBS; PAM JACOBS;
DEBORAH JOHNSON; JAMES
JOHNSON, JR; TERRY JOHNSON;
LETHA MAY CHRISTIAN-JOHNSON,
EXECUTRIX OF THE ESTATE OF
CLEASBY ORNTNY JOHNSON,
DECEASED; ESTATE OF CLEASBY
ORNTNY JOHNSON; DAVID
JUSTICE; KATHRYN KEES; CARLEY
KIMBLE; ANGELA KNAPP; CHARLES
LAVENDER; TERRI LAVENDER;
FREDRICK L. LEFFINGWELL; SANDRA
LEFFINGWELL; JEFFREY
LEFFINGWELL; JOSHUA CONRAD
LEWIS, A MINOR BY AND THROUGH
HIS PARENTS KELLY JANE SMITH
AND DELBERT JOSEPH LEWIS; KELLY
JANE LEWIS; DELBERT JOSEPH
LEWIS; DANA E. LEISURE; JASON
LET; CORA LINVILLE; GROVER
LINVILLE; SANDRA LOWE; KENNETH

2

LOWE; PEGGY MARCUM; HAROLD
MAY FIELD; MICHAEL McCALLISTER;
RENEA McCOMAS; MORGAN
McCORMICK; CINDY McCORMICK WILLIAMS,
NEXT FRIEND OF
MORGAN McCORMICK; ROY JOSEPH
McCUNE; JAMES McDONALD; MAE
McDONALD; PAMELA McGREW;
HELEN McLEMORE; DUSTIN
MEADOWS; NINA MEADOWS; JOHN
MEADOWS; GREGORY MEANS;
RONALD MILLER, JR.; BARBARA
MORRIS; LEE MORRIS; MADELINE J.
MURPHY, A MINOR BY AND
THROUGH HER PARENTS APRIL
MURPHY AND MATHEW MURPHY;
APRIL MURPHY; MATHEW MURPHY;
BOBBI JO MUTO; JONATHON
NEMETH; TERESA NEMETH; ESTHER
D. NEWHART; SHERRY NICHOLAS;
RODNEY NICHOLAS; MATTHEW NULL; SHELVA
NUNN; RANDY J. PECK; HAZEL
PLUMLEY; MICHAEL PLUMLEY; EXIE
E. REDMAN; DOY E. REDMAN;
CYNTHIA REED; JEREMY ROSE;
KATHERINE RUTLEDGE AKA
KATHRYN RUTLEDGE; BARRY
RUTLEDGE; KATIE RUTLEDGE, A
MINOR BY AND THROUGH HER
FATHER BARRY RUTLEDGE;
KIMBERLY SCOTT; JEFFREY SCOTT;
MICHAEL SEARLS; ROBERTA SHOCK;
FRANK SHOCK; JULIA SHOFFNER;
ANGELA SIZEMORE; DEXTER
SMALLEY; BRENDA SMALLEY;
KENNETH SMITH; DEBORAH SMITH;
ROBERT SMITH; ANNA LEA SMITH;
BRIAN SMITH; JOHN SNYDER; CAROL
SPONAUGLE; ADAM SPONAUGLE;
EVERETT STOVER; GARY SUMMERS;
GALE SUMMERS; KAREN TERRY;
BENJAMIN THOMAS; ALICE THOMAS;
SUSAN HARRISON, EXECUTRIX OF
THE ESTATE OF DORTHA THORNTON,
DECEASED; ESTATE OF DORTHA

THORNTON; JOHN C. THORNTON;
CARRIE TRIPLETT; MARK TRIPLETT,
A MINOR BY AND THROUGH HIS
FATHER WILLIAM TRIPLETT;
MADELINE TRIPLETT, A MINOR BY
AND THROUGH HER FATHER
WILLIAM TRIPLETT; WILLIAM
TRIPLET, A MINOR BY AND
THROUGH HIS FATHER WILLIAM
TRIPLET; KENNETH VAUGHAN;
ROBIN WAGEMAN; BETH A. WALKER;
MELISSA WALKER; KENNETH
WHITTEN; GARY WILFONG; KATRINA
WILFONG; VICKIE WILSON; EUGENE
WILSON; BARBARA WOOTEN; ROY
WORKMAN; AND DOES 1 THROUGH
100,

      Defendants.

## MEMORANDUM OPINION AND ORDER

       Pending before the court are the motions of plaintiff,
filed November 2, 2006, seeking summary judgment in this
declaratory judgment action and further seeking leave to file a
22-page memorandum in support of its motion for summary judgment,
which latter motion is ORDERED granted.  Also pending before the
court is the motion of those defendants represented by the law
firm of Curry & Tolliver, filed November 3, 2006, seeking summary
judgment.  This motion was adopted by the defendants represented
by the Law Offices of William S. Druckman and by the defendants
represented by the law firms Tabor Lindsay & Associates,

**4**

DiTrapano, Barrett & Dipiero, and Conley Griggs. [1]

I.

   A.   The Policies

       During 2002 to 2003, Teays Valley Health Services, LLC
did business as Putnam General Hospital ("Putnam General").
(Responses attached as Exs. F through I to Pl.'s Mot.)   Putnam
General was a wholly owned, indirect subsidiary of HCA Inc.
("HCA"). (Pl.'s Memo. at 2.)

       Plaintiff Health Care Indemnity ("HCI"), is an
insurance company with its home office in Nashville, Tennessee.
(Pl.'s Am. Compl. at ¶ 1; Pl.'s Memo. at 2.)   HCI issued two
substantively identical health care liability insurance policies
to HCA: one for calendar year 2002 and the other for calendar
year 2003.   (Pl.'s Memo. at 2; HCI Policies, attached as Exs. A

-------

       [1] According to the docket, 71 sets of defendants are
represented by the law firm of Curry & Tolliver, 11 sets are
represented by the Law Offices of William S. Druckman, and 25
sets are represented by the law firms Tabor Lindsay & Associates,
DiTrapano, Barrett & Dipiero, and Conley Griggs.   Defendant
Everett Brown is represented by Paul M. Stroebel.   Two
defendants, Michael McCallister and Angela Sizemore, have not
appeared.   On September 26, 2006, plaintiff moved for entry of
default by the Clerk against McCallister and Sizemore
representing that they had been served with a summons and the
amended complaint, but did not file a responsive pleading.   It is
unclear why default was not entered against these defendants.

and B to Pl.'s Mot.)

The HCI policies provide in pertinent part

I.   Insuring Agreements

1. [] The Company [HCI] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

Coverage A. Personal Injury or
Coverage B. Property Damage or
Coverage C. Injury,

to which this Policy applies, caused by an occurrence during the policy period.

The Company shall have the right and duty to defend any suit against the insured seeking such damages even if any of the allegations of the suit are groundless, false, or fraudulent.
[. . .]

II.  Persons Insured

Each of the following is an insured under this Insurance Policy to the extent set forth below:

(a)  The named insured.  The "named insured," wherever used, includes:

(1)   any subsidiary company (including subsidiaries thereof) of the named insured, or

(2)   if the named insured is a partnership or joint venture, any partner or member thereof, or any partnership in which the named insured is a general or controlling partner now existing, or heretofore created or acquired.

(b)  Additional insureds as scheduled on or endorsed hereto, other than the named insured, but only to the extent as provided for in such endorsements.
[. . .]

6

     (d)  Employees while acting within the scope  of their duties as such, other than employees in the following employment categories:

          (1)  physician, including osteopathic physician [. . .]

     (e)  Employees in the nine employment categories excluded under (d) above, while acting within the scope of their employment duties, but only if those insureds are scheduled on the Physician/Physician Extender List on file with the Company prior to the date of the occurrence.

**V.  Definitions**

     When used in this policy (including Endorsements forming a part thereof):

     "employee" means all personnel classified as such by the named insured as well as all student nurses or student technicians under the direct supervision of any insured.

     "first named insured" means the organization named in Item 1 of the Declarations of this policy.

     "insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage.  The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability.

     "named insured" means the first named insured and any additional organizations identified as a named insured in the Declaration page or by Endorsements, if any are attached.  Named insured also means any subsidiary organizations of a named insured that are in existence at the inception of the policy, or that are either created or acquired during the term of the policy.  A named insured ceases to be an insured under this policy as of the date that it is no longer a subsidiary of the organization named in Item 1 of the Declarations of this Policy or on the date identified

in an Endorsement if any are attached.

(HCI Policies, attached as Exs. A and B to Pl.'s Mot.)   HCI

admits that Putnam General is insured under those policies.

(Id.)

B.   The Recruiting Agreement

On October 21, 2002, Putnam General and defendant John

A. King, D.O. ("Dr. King"), entered into a recruiting agreement.

The recruiting agreement provides in pertinent part that

1.   Physician [Dr. King] shall, on or before
December 1, 2002 engage in the full-time private
practice of medicine as a/an Orthopedic Surgeon in the
Community.[. . .]

3. [] Physician agrees to engage in the private
practice of medicine as a/an Orthopedic Surgeon in the
Community on a full-time permanent basis for at least
Forty Eight (48) months after Physician commences said
private practice . . .

5.   At all times during the term of this
Agreement, Physician is and shall be an independent
contractor and not a servant, agent, or employee of
Hospital.  Hospital and Physician further agree that
nothing contained herein shall be deemed to create any
type of employment, agency, servant, partner, or joint
venture relationship between Physician and Hospital.

6.   Physician shall maintain professional
liability insurance in the minimum amount of one
million Dollars ($1,000,000) per occurrence, three
million Dollars ($3,000,000) in the aggregate (claims-
made type policy), in any combination of primary or
secondary coverage, for so long as Physician engages
in the business of providing medical services or is a
member of Hospital's medical staff . . .

8

(Recruiting Agreement, attached as Ex. R to Pl.'s Mot.)

Pursuant to paragraph six of this agreement, Dr. King submitted a physician professional liability insurance application to the West Virginia Board of Risk & Insurance Management ("BRIM").  (BRIM Application, attached as Ex. K to Pl.'s Memo.) BRIM subsequently issued a professional liability policy to Dr. King, for the period of November 1, 2002, to November 1, 2003. (BRIM Policy Declarations, attached as Ex. J to Pl.'s Memo.)

In accordance with the recruiting agreement, Dr. King received privileges to practice at Putnam General; however, in May of 2003, Putnam General suspended Dr. King's privileges.  (Letter dated December 9, 2005, from HCI to Dr. King at 3, attached as Ex. B to Pl.'s. Memo. in Resp. to Tabor Lindsay Defs.' Mot. to Dis.) In August of 2003, Dr. King resigned his privileges at Putnam General as well as his medical license. (Id.)

C.    The Underlying State Court Actions

Defendants in this action, other than Dr. King, ("underlying plaintiffs") are patients and former patients of Dr. King and are currently plaintiffs in numerous state court actions pending in the Circuit Court of Putnam County, West Virginia. (Pl.'s Am. Compl. ¶ 7.)  These actions arise out of the alleged

medical malpractice committed by Dr. King during his Putnam County medical practice.  (Id. ¶¶ 7, 8.)  The first action against Dr. King was filed in 2003, and by 2005 approximately 110 actions had been instituted, all in the Circuit Court of Putnam County.

The court has been provided with two of the complaints filed in the Circuit Court of Putnam County, namely, the complaints filed by Pamela McGrew and Cynthia Reed.  (Complaints, attached as Exs. T and V to Pl.'s Mot.)  The complaints are substantively identical and provide that

> At all times relevant to the allegations set forth in this Complaint, EBI L.P., Wright Medical, Edwards, Teays Valley [Putnam General], McNair and [Dr.] King[2] were members of a joint venture or joint enterprise, [and] each member of the joint venture or enterprise is liable for the negligent, willful, wanton, reckless or intentional actions of the other.  Therefore, EBI L.P., Wright Medical, Edwards, Teays Valley [Putnam General], McNair and [Dr.] King are each jointly and severally liable for any damages that may be awarded against any of them for the negligent, willful, wanton, reckless, and intentional acts that occurred during the operative procedure performed.

(Id. ¶ 78.)  The underlying plaintiffs represented by Curry & Tolliver represent that "[e]very other medical malpractice plaintiff has made similar allegations [to those asserted in the

---

[2] Wright Medical Technology, Inc. ("Wright Medical") and EBI L.P. are two corporations that allegedly sold or supplied medical products, equipment, and devices to Dr. King.  (Reed Compl. ¶ 11.)  Edwards is an employee of Wright Medical and McNair is allegedly Dr. King's physician's assistant.  (Id. ¶¶ 3, 12.)

10

<u>Reed</u> action].”   (Curry & Tolliver Memo. at 5.)

      D.    <u>Dr. King's Tender</u>

        BRIM retained attorney P. Gregory Haddad to defend Dr. King in a number of the state court lawsuits.  (Dr. King State Court Answer, attached as Ex. U to Pl.'s Mot.)  Haddad contacted HCI by letter dated November 11, 2005, insisting the HCI was obligated to defend and indemnify Dr. King under the provision[s] of the HCI policies which referenced “joint venture.”

        HCI responded to the letter contending that it is under no obligation to defend or indemnify Dr. King.  According to HCI “[n]either of the HCI policies contains any endorsement, or other policy provision, naming Dr. King as a ‘named insured,’ ‘insured,’ or otherwise as a person insured under the policy.” HCI further maintains that Dr. King is a doctor of osteopathy, was never listed on the Physician/Physician Extender List maintained by HCI, and was never an employee of Putnam General. It is HCI's position that the policy provision in which “joint venture” is referenced does not support Dr. King's claim. According to HCI,

        The first clause of section II(a)(2) only applies <u>if</u> the “named insured” is a “partnership or joint venture.”  For that to apply, the “joint venture” allegation in the various complaints must create a

'named insured" as defined by the HCI policies.

> The HCI policies define "named insured" to mean (1) the "first named insured," (2) "any additional organizations identified as a named insured in the Declaration page or by Endorsements, if any are attached," and (3) "any <u>subsidiary organizations</u> of a named insured that are in existence at the inception of the policy, or that are either created or acquired during the term of the policy."  None of those three subparts of the definition of "named insured" applies here.

> Neither the declarations page nor any endorsement to the HCI policies names any joint venture involving Dr. King as a named insured.  The second subpart of the definition of "named insured" does not apply.

> Both the first and third subparts of the definition of "named insured" apply only to "<u>subsidiary organizations</u>."  The "first named insured" is listed on the declarations as "HCA Inc. and subsidiary organizations existing now or hereafter created or acquired."  The third subpart includes "subsidiary organizations" in identical language.

(HCI letter at 6-7.)(emphasis in original).  HCI further advised Dr. King that even assuming that an underlying plaintiff could demonstrate an ad hoc joint venture for the purpose of establishing vicarious liability, that would not constitute a "subsidiary organization of a named insured," and HCI would be under no duty to defend or indemnify Dr. King.

**E.**   <u>Procedural History and Prior Rulings</u>

On November 16, 2005, HCI instituted this declaratory judgment action naming only Dr. King as a defendant.  On December 15, 2005, HCI amended its complaint to add the underlying plaintiffs as defendants.  HCI requests the court declare that (1) HCI has no obligation to defend or indemnify Dr. King in the underlying lawsuits; (2) HCI has no obligation to indemnify Dr. King for any judgment returned in the underlying lawsuits in favor of any of the underlying plaintiffs, and (3) the HCI policies do not in any way inure to the benefit of the underlying plaintiffs for claims asserted against Dr. King for medical negligence in the underlying lawsuits.

In motions filed on February 13, February 16, and March 9, 2006, the underlying plaintiffs sought dismissal of this action contending that the court should decline to exercise jurisdiction under the Declaratory Judgment Act and further asserting that HCI has failed to join necessary and indispensable parties whose presence would defeat diversity jurisdiction.  The court rejected those arguments, found federal jurisdiction to be proper, and made a number of observations that are germane for the resolution of the motions now pending.

13

Addressing West Virginia's interest in having the issues raised in the federal declaratory action decided in a West Virginia court, the court observed

> Application of the significant relationship test suggests that Tennessee law would govern this action. The policies were executed and negotiated by HCI and HCA, two residents of Tennessee.  Additionally, the policies appear to have been delivered in Tennessee. The performance of the policies was to occur, in part, in West Virginia inasmuch as the two policies insured entities in West Virginia; however, the two policies also insured corporate entities across the nation in over twenty states including Tennessee.  Similarly, while Teays Valley's Putnam General Hospital is located in West Virginia, the insured risk is spread among those same twenty states including West Virginia and Tennessee.  Finally, the domicile, residence, and place of incorporation and business of the parties includes both Tennessee and West Virginia inasmuch as the underlying plaintiffs are, presumably, all West Virginia residents and HCI is a Tennessee corporation. While West Virginia does have some relationship to the policies, application of the significant relationship test tilts in favor of Tennessee whose law would therefore govern interpretation of the policies.

(September 25, 2006, Ord. at 17-18.) (internal citation omitted).

In the context of an "unnecessary entanglement" analysis under the Nautilus factors, the court further stated

> [I]t appears that even assuming plaintiffs did receive a favorable verdict on the issue of joint venture liability, the issues surrounding HCI's purported obligations to defend and indemnify Dr. King will remain unresolved inasmuch as a determination of an existence of these obligations turns not on the existence of any joint venture, but rather on the interpretation of the term "subsidiary organization" under the HCI policies.

14

(<u>Id.</u> at 24.) (internal citation omitted).

II.

The parties have not provided any analysis suggesting that the court should apply West Virginia law, and all the briefs submitted by the parties cite Tennessee authority for the rules governing the interpretation of insurance policies.  In view of the court's analysis in its September 25, 2006 order, cited <u>supra</u>, the court finds that Tennessee law governs resolution of this dispute.

The scope of coverage and the insurer's duty to defend are questions of law that can appropriately be resolved in a motion for summary judgment when, as here, the pertinent facts are undisputed.  <u>St. Paul Fire and Marine Ins. Co. v. Torpoco,</u> 879 S.W.2d 831, 834 (Tenn. 1994).

An insurance policy is subject to the same basic rules of construction and enforcement as are used for contracts in general. <u>McKimm v. Bell</u>, 790 S.W.2d 526, 527 (Tenn. 1990).  Like contracts, the principal goal in interpreting insurance policies is to ascertain and to enforce the intent of the contracting parties. <u>Harrell v. Minn. Mutual Life Ins. Co.</u>, 937 S.W.2d 809, 814 (Tenn. 1996).  An insurance policy should be construed as a

15

whole and in a reasonable and logical manner."  English v. Virginia Sur. Co., 268 S.W.2d 338, 340 (Tenn. 1954).

Absent fraud or mistake, the insurance policy will be interpreted as written, with the terms of the policy being accorded their ordinary and natural meaning.  Drexel Chemical Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 477 (Tenn. App. 1996). To determine the ordinary and natural meaning of terms not defined by the policy, Tennessee courts have referred to dictionary definitions.  American Justice Ins. Reciprocal v. Hutchison, 15 S.W.2d 811, 815 (Tenn. 2000); Tata v. Nichols, 848 S.W2d 649, 653 (Tenn. 1993).

III.

The pertinent inquiry, as identified by the court in its memorandum opinion and order, is whether the alleged "joint venture/joint enterprise" constitutes a "named insured" as defined by the HCI policies.

The HCI policies define "named insured" to mean (1) the "first named insured," (2) "any additional organizations identified as a named insured in the Declaration Page or by Endorsements, if any are attached," and (3) "any subsidiary organizations of a named insured that are in existence at the

16

inception of the policy, or that are either created or acquired during the terms of the policy."  The second subpart does not apply inasmuch as neither the declarations page nor any endorsement to the HCI policies names Dr. King as a named insured.

Under the policies, the "first named insured" is "HCA Inc. and subsidiary organizations existing now or hereafter created or acquired."  Accordingly, for the first or third subparts to apply, the underlying plaintiffs' "joint venture/joint enterprise" allegation must constitute a subsidiary organization.  Stated differently, even assuming Dr. King was a member of a "joint venture/joint enterprise," he is not insured under the policies unless that purported entity qualifies as a "subsidiary organization."

Dictionary definitions of "organization" suggest the term refers to a formally structured entity.  Webster's Third New International Dictionary of the English Language defines organization to be "a group of people that has a more or less constant membership, a body of officers, a purpose, and usually a set of regulations."  The American Heritage Dictionary of the English Language similarly defines organization to be "a structure through which individuals cooperate systematically to

conduct business."

With respect to the term "subsidiary," dictionaries suggest the word means owned and/or controlled by another company.  Third New International Dictionary of the English Language defines subsidiary to mean "belonging to or controlled by another [a ~ company]."  The Cambridge Dictionary of American English also provides that a subsidiary is "a company that is owned by a larger company."

From the separate dictionary definitions one can gather that the term "subsidiary organization" means a formally structured entity that is owned and/or controlled by a company. Although there appears to be no case authority from Tennessee addressing the meaning of the term "subsidiary organization," at least one court has addressed the interpretation of this term and has construed it in a manner consistent with the dictionary definitions.  In <u>Hamilton v. International Union of Operating Engineers</u>, 262 S.W.2d 695, 699 (Ky. 1953) the court observed

> We have no difficulty in concluding that the branch
> offices of Local No. 181 in Paducah and Louisville are
> not 'subsidiary organizations' within the meaning of
> the statute, for the simple reason that they are not
> 'organizations'.  We think it is clear that the word
> 'organization' as used in the statute contemplates an
> orgnizational [sic] unit with a governmental structure
> of its own - something that is capable of some degree
> of independent existence as an entity.

at 699.  The court in Comptroller of Treasury v. Crown Central
Petroleum Corp., 451 A.2d 347 (Md. App. 1982) addressed the
interpretation of the similar term "subsidiary corporation"

> [T]he term "subsidiary corporation" has been
> generally defined as "one which is controlled by
> another corporation by reason of the latter's
> ownership of at least a majority of the shares of the
> capital stock."  Black's Law Dictionary (5th ed.
> 1979) takes the same approach, defining "subsidiary
> corporation" as "one in which another corporation
> (i.e., parent) owns at least a majority of the
> shares, and thus has control.  Said of a company more
> than 50 percent of whose voting stock is owned by
> another."

at 353. (internal citations omitted).

Giving the term "subsidiary organization" its plain
and ordinary meeting, as the court must under Tennessee law, it
would be a formally structured entity owned or controlled by
another company.  Here, the purported joint venture/joint
enterprise cannot be said to be a "subsidiary" inasmuch as it is
not alleged to have been, nor does it appear to be, owned and
controlled by HCA or by Putnam General.  Moreover, the purported
joint venture/enterprise is not alleged to be a formally
structured entity.  HCI maintains that the alleged joint
venture/joint enterprise has no formal rules, meetings, members,
or records, it makes no regulatory filings, and it is not
accounted for in Putnam General or HCA's records.  The

underlying plaintiffs and Dr. King have failed to produce any evidence to refute HCI's position on this point.  The purported joint venture/joint enterprise allegation thus cannot be said to be an "organization," nor is it a "subsidiary."

Moreover, coverage is not available under other provisions in the policies, namely, Section II(d)-(e).  Under these provisions, employees, excluding among others an osteopathic physician, and employees scheduled on the Physician/Physician Extender List are insured under the policies.  The recruiting agreement under which Dr. King was employed expressly provides that he is not an employee of Putnam General.  In any event, even if Dr. King could somehow be deemed an "employee" he is not afforded coverage inasmuch as the policies expressly exclude as insured an osteopathic physician such as Dr. King.  Finally, it is undisputed that Dr. King was not on the "Physician/Physician Extender List" identified in subsection (e).

The underlying plaintiffs and Dr. King do not offer a differing interpretation of the term "subsidiary organization" or the provisions in Section II(d)-(e).  Instead, they assert that

The policy [sic; policies] of insurance issued by

> HCI could have provided that if the named insured is
> "designated" in the declarations as a joint venture,
> then the named insured shall include any partner or
> member thereof.  This language was not included in the
> policy. [. . .]
>
>     HCI's interpretation of the policy language would
> render the joint venture language of the policy
> superfluous.  The declarations page as produced by HCI
> does not designate any joint ventures as insureds
> under the policy.  However, the policy language
> specifically provides that "if the named insured is a
> partnership or joint venture, any parties [sic;
> partner] or member thereof."

(Curry & Tolliver Defs.' Memo. at 5-6.)[3]  Notwithstanding the

court's observation that "a determination of an existence of

these obligations [referring to HCI's purported duty to defend

and indemnify Dr. King] turns not on the existence of any joint

venture, but rather on the interpretation of the term

'subsidiary organization,'" Dr. King asserts that

> HCI's argument that Dr. King is not an insured
> under the policy unless that "entity" qualifies as a
> "subsidiary organization" is contrary to the language
> of the policy.  To be a "named insured under the
> policy, an entity must either be a subsidiary company
> of HCA, e.g. Teays Valley [Putnam General] or involved

---

[3] The underlying plaintiffs represented by the Law Offices
of William S. Druckman adopted the motion for summary judgment
and accompanying memorandum filed by the underlying plaintiffs
represented by the law firm of Curry & Tolliver.  The underlying
plaintiffs represented by the law firms Tabor Lindsay &
Associates, DiTrapano, Barrett & Dipiero, and Conley Griggs also
adopted the same memorandum filed by the law firm of Curry &
Tolliver and further filed a separate memorandum in response to
HCI's motion for summary judgment, which in essence recites
arguments already presented to the court.

in a joint venture with a named insured, e.g. Teays
Valley [Putnam General].  The HCI policy did not limit
coverage for joint ventures designated in the
declarations and did not require that Dr. King be
listed as a member of the joint venture in order to
trigger coverage.

(Dr. King's Resp. Memo. at 4.) (emphasis in original).

These contentions are without merit.  Neither of the
two policies -- one for 2002 and the other for 2003 -- provides
that Dr. King is insured if he is in a joint venture/joint
enterprise with a named insured.  Instead, the policies simply
provide that the joint venture entity itself must be a named
insured.

Also, HCI's interpretation of the policies does not
render the term "joint venture" superfluous as suggested by the
underlying plaintiffs.  A formally created, documented "joint
venture" entity could be a "named insured" under the policies.
Indeed, in its discovery responses HCI identified four documented
joint ventures which it acknowledged were insured under the two
HCI policies.  (Pl.'s Discovery Responses, attached as Ex. X to
Pl.'s Resp. Memo.)

Furthermore, while the policies certainly could have
contained an exclusion limiting coverage for joint ventures, this
does not somehow serve to alter the conclusion that Dr. King is

22

not insured under the unambiguous language of the policies.  The
policies are able to achieve the effect of limiting coverage of
alleged joint ventures through the language employed in Section
II and the definition of "named insured."

     Finally, the reading of the policies proposed by the
underlying plaintiffs and Dr. King suggests a peculiar result for
at least two reasons.  First, under their reading, all the co-
defendants in the underlying state court lawsuits (including
other corporate defendants not named in this opinion) would be
insured under the HCI policies inasmuch as these co-defendants
are alleged to be members of a joint venture/joint enterprise.
Second, Dr. King would be insured under the policies
notwithstanding that he (1) has agreed that he is not an employee
of Putnam General, (2) was expressly excluded from coverage as an
osteopathic physician, (3) is not found on the
Physician/Physician Extender List, and (4) obtained malpractice
insurance from another insurer.

     The facts of this case indicate that had there been any
intent to insure Dr. King under the policies, he could have been
named an "insured" in an endorsement made pursuant to subsection
II(b).  That, however, was not done, nor was it necessary,
inasmuch as Putnam General required Dr. King to purchase his own

professional liability insurance, which he did.

Under the plain language of the HCI policies, HCI has no obligation to defend or indemnify Dr. King in the underlying lawsuits; HCI has no obligation to indemnify Dr. King for any judgment returned in the underlying lawsuits in favor of any of the underlying plaintiffs, and the HCI policies do not in any way inure to the benefit of the underlying plaintiffs for claims asserted against Dr. King for medical negligence in the underlying lawsuits.  The court accordingly finds that HCI's motion for summary judgment should be granted and the motion of the underlying plaintiffs seeking summary judgment should be denied.[4]

_____

[4] HCI's motion does not seek summary judgment on the counterclaim filed by Dr. King.  The counterclaim provides in its entirety

> HCI has refused to provide Defendant/Counter-Plaintiff with a defense or coverage for the malpractice claims asserted against him.  This is a breach of the terms of the HCI policies and an act of bad faith.  As a result of HCI's bad faith and its breach of the terms of the HCI policies, Defendant/Counter-Plaintiff has been made to suffer economic harm and mental anguish.

(Dr. King's Counterclaim ¶ 12.)  Inasmuch as HCI was under no obligation to defend or indemnify Dr. King, HCI did not breach the terms of the policies, and the court finds that Dr. King's counterclaim should be dismissed with prejudice.

24

IV.

In view of the foregoing it is ORDERED that

(1) HCI's motion for summary judgment be, and it hereby is, granted;

(2) the motions of the defendants seeking summary judgment be, and they hereby are, denied; and

(3) Dr. King's counterclaim be, and it hereby is, dismissed with prejudice.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and the Clerk of the Circuit Court of Putnam County, West Virginia.

DATED: February 14, 2007

John T. Copenhaver, Jr.
United States District Judge

25